Filed 3/23/22  Richard F. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| RICHARD F.,<br><br>      Petitioner,<br><br>           v.<br><br>THE SUPERIOR COURT OF MERCED COUNTY,<br><br>      Respondent;<br><br>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>      Real Party in Interest. | F083817<br><br>(Super. Ct. No. 20JP-00070A)<br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Brian L. McCabe, Judge.

Richard F., in pro. per., for Petitioner.

No appearance for Respondent.

Forrest W. Hansen, County Counsel, and Jennifer O. Trimble, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]      Before Hill, P. J., Detjen, J. and Smith, J.

Richard F. (father), in propria persona, seeks an extraordinary writ from the juvenile court's orders issued at a contested 18-month review hearing (Welf. & Inst. Code, § 366.22)[1] in January 2022 terminating reunification services and setting a section 366.26 hearing scheduled for May 12, 2022, as to his daughter, now 16-year-old E.F. Father contends the court erred in terminating reunification services because the Merced County Human Services Agency (agency) failed to provide him reasonable reunification services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

E.F. and her brother Richard were removed from father and F.F., father's wife and the children's mother, in 2013 by the Utah Department of Children and Family Services because of the parents' substance abuse, neglect and child endangerment. The children were placed with their paternal grandmother and her husband, L.B., in a legal guardianship in Merced. In 2017, the grandmother passed away and Richard returned to live with his parents in Utah leaving E.F. alone with L.B. (the guardian).

These dependency proceedings were initiated in June 2020 when then 14-year-old E.F. reported the guardian had been molesting her three to four times a week for the past year. The guardian denied the allegations. He was arrested and charged with lewd acts with a minor.

Father was unaware of the sexual abuse. His only contact with E.F. was through social media because the guardian did not allow telephone contact. Father was a plumber and had been sober for two years. He planned to relocate to California in September 2020 to regain custody of E.F.

F.F. (mother) was incarcerated in Utah on a probation violation. She admitted relapsing on methamphetamine a month before. She believed the guardian sexually abused E.F.

---

[1]    Statutory references are to the Welfare and Institutions Code.

2.

The department took E.F. into protective custody and placed her in a foster home in Merced County. The department filed a dependency petition, alleging E.F. fell within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect), (d) (sexual abuse) and (g) (no provision for support).

The juvenile court ordered E.F. detained pursuant to the petition and scheduled a jurisdiction/disposition hearing for July 15, 2020. The hearing was continued and conducted in September 2020. In its report for the hearing, the agency recommended the juvenile court provide reunification services to the parents but deny them to the guardian under section 361.5, subdivision (b)(6) (severe sexual abuse).

At a jurisdiction/disposition hearing on September 16, 2020, the juvenile court adjudged E.F. a dependent child as alleged in the petition, ordered her removed from the guardian and denied the guardian reunification services, visitation and contact. The court ordered father to participate in random drug testing and substance abuse treatment if he tested positive. Mother was to complete assignments in domestic violence and nurturing skills for families, and participate in any drug treatment services available to her in jail. Upon her release from custody, she was required to participate in random drug testing.

The parents continued to reside in Utah with then 17-year-old Richard. Father was making repairs and improvements on the family home. He participated in services through teleconferencing and correspondence and completed a parenting education course and was scheduled to complete a class on childhood trauma in January 2020. However, he maintained sporadic contact with the agency, making it difficult for the social worker to schedule random drug tests for him. In addition, he did not have valid identification, which the testing facility required. As a result, the agency asked him to complete an alcohol and drug assessment and instructed him where to have the assessment completed.

Mother was released from jail in December 2020 after serving two years for substance abuse charges. She reportedly participated in services while incarcerated but

3.

did not provide any proof of having completed them. Her contact with the agency was also sporadic. The parents visited E.F. through correspondence, the telephone, text messages and teleconference.

In January 2021, at the six-month review hearing, the juvenile court found the parents made minimal progress and continued their reunification services to the 12-month review hearing, which it set for July 2021. The court ordered the department to arrange supervised visits for the parents if they came to California.

In its report for the 12-month review hearing, the department recommended the juvenile court terminate reunification services and place E.F. in a legal guardianship with her care provider. Although father reported being sober, he was not regularly participating in drug testing, which he claimed was because he did not have a valid identification card. He attempted to get a copy of his driver's license but needed his original birth certificate, which he ordered and was awaiting its arrival. He was able to test for the Wasatch Behavior Health Program in Utah on March 8, 2021, when he completed his drug and alcohol assessment and the results were negative. However, because he did not meet the criteria for substance abuse services, they were unable to continue testing him. On May 20, 2021, his urine was tested at a medical center and the results were negative. On May 26, the social worker arranged a hair follicle drug screen for father but he did not submit a hair sample before the request expired on May 30. Father completed two parenting programs and utilized the skills he learned in his contacts with E.F. However, he stopped communicating with her sometime in May.

Mother completed a correspondence course in anger management for substance abuse and mental health clients. She also completed a drug and alcohol assessment in March 2021 and was referred to a recovery management treatment program and weekly drug testing. She missed several tests and then tested positive for methamphetamine on April 14 and May 3, 2021. As a result of her positive drug tests, she was required to test

4.

twice a week but did not comply. She visited E.F. through correspondence, telephone calls, text messages and teleconference.

The 12-month review hearing was conducted as a contested hearing on August 31, 2021. Mother did not appear and the juvenile court did not find good cause to continue the hearing. Father testified he was employed as a plumber and had worked for the same company for over four years. He completed the improvements on his home in December 2020, completed a parenting class recommended by the agency and volunteered to complete another one. He was able to utilize the skills he learned in parenting with E.F. through telephone conversations and with Richard at home. Father had been sober for three years. He completed a substance abuse evaluation for the agency and was not referred for substance abuse services. He completed several drug tests and the results were negative. The agency arranged for him to have a hair follicle test but he was unable to make the appointment because of his work schedule and the testing facility was 50 miles away. He planned to go on a Sunday but was called in to work because a water main broke in a mobile home park that his company maintained. He visited E.F. through videoconferencing and social media. He missed several months of visits because of his work schedule but resumed contact with her. After mother was released from custody in December 2020, she moved into the family home. However, she and father separated several times because of her drug use. The last time they separated was the weekend before the hearing. Father had no intention of letting her move back until she abstained from drug use.

The juvenile court found it would be detrimental to return E.F. to father's custody, given the fact that the mother was struggling with her addiction and was recently residing in the home. The court was also concerned about the lack of quality visits between father and E.F. The court was impressed with father's progress in completing his home improvements, continuing his employment, completing parenting classes, taking care of Richard, and testing negative. The court wanted him to complete a hair follicle test to

5.

make sure he was abstinent. The court found father was provided reasonable reunification services and had taken advantage of them to the extent he could. The court also found there was a substantial probability E.F. could be returned to his custody within another six months and continued reunification services to the 18-month review hearing which the court set for December 1, 2021. The court terminated mother's services.

On September 17, 2021, the agency prepared an updated reunification plan which required father to complete a new parenting class and a drug and alcohol assessment and follow any treatment recommendations. It also required him to complete urine and/or hair follicle drug screens on the date requested by the social worker. The updated case plan was filed with the juvenile court on September 21.

On September 21 and 29, 2021, and October 22, 2021, social worker Doreen Silva-Gutierrez attempted to review the case plan with father but he did not make himself available. She was finally able to review it with him on October 28. She emailed it to him to sign and return but he did not sign it. On October 28, Silva-Gutierrez completed a visual walk through of father's three bedroom, two bathroom home. The front of the home was cluttered with buckets, boxes, tools, and other miscellaneous items. The inside of the home was clean but slightly disorganized with misplaced items. The refrigerator and freezer were supplied with food.

On October 17, 2021, father was arrested in Utah on an outstanding warrant. At the time of his arrest, he was in possession of methamphetamine and a pipe with residue.

In its report for the 18-month review hearing, the department recommended the juvenile court terminate father's reunification services. Father would not confirm or deny that he relapsed and did not make himself available for urine and/or hair follicle analysis. E.F. stated father did not make himself available on a consistent basis. E.F. wanted to live with her brother when he was able to take care of her. In the meantime, she wanted to live with her care provider. Father supported E.F.'s choice to remain with her care provider.

The 18-month review hearing was conducted on January 18, 2022, as a contested hearing. Mother was incarcerated and did not appear.

Father testified mother left his home on September 15, 2021, to enter a drug rehabilitation program. While she was living with him, she was using methamphetamine. She was incarcerated for being in possession of a medication not prescribed to her. He was still married to mother but did not plan to resume living with her when she was released from custody because of her drug use.

Father did not sign the case plan because it required him to electronically sign it and he did not know how. The new case plan required him to complete a new parenting class, which he had not done. The social worker set him up for one which was scheduled to begin on January 20, 2022. After father missed the hair follicle test in May 2021, he called Silva-Gutierrez and explained why he could not make it and asked to schedule another test. He left a voicemail but she did not respond. He later found out that she was no longer his social worker. He relapsed on October 14, 2021, and was arrested. He pled guilty to possession of a controlled substance and was sentenced to 18 months of court probation, fined, and required to complete a drug assessment and treatment.

Father spoke to E.F. three or four times a week, except for a period of about three months when she did not have a cell phone because it was stolen. Their visits went well and they had a great relationship. He explained that the clutter Silva-Gutierrez described in her report were tools and materials he used for his jobs. Because he did not have a garage, he sometimes emptied his truck in the front yard and then loaded what he needed in his truck for his next job.

Silva-Gutierrez testified she could not identify the tools on father's lawn but knew they were work tools and were dangerous. The house was "slightly disorganized" in that there was clothing on the ground throughout the bedrooms and dirty dishes in the sink and on the table.

Father's attorney argued for family maintenance or continued family reunification services. He spoke to E.F. regularly and they had a good relationship. There was no evidence that placing E.F. with him would pose a danger to her. He had done everything asked of him, only had one relapse in 18 months and did not plan to reside with mother.

The juvenile court terminated father's reunification services and set a section 366.26 hearing. The court found that father's failure to participate regularly was prima facie evidence of detriment and the court could not find exceptional circumstances to extend services beyond 18 months. The court also found the agency provided father reasonable reunification services.

## DISCUSSION

*Reunification Services Generally*

" 'Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." ' " (*Christopher D. v. Superior Court* (2012) 210 Cal.App.4th 60, 69.)

"To achieve the goal of preserving the family whenever possible, the Legislature required the county child welfare departments to develop and implement family reunification plans and required the courts to monitor those plans through periodic review … at intervals of no less than six months and determine, among other things, whether reasonable reunification services have been offered." (*In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1211.)

The Legislature, however, also placed limitations on the duration of reunification services. In general, services are limited to 18 months from the date the child was originally removed from the physical custody of a parent or guardian. (§ 361.5, subd. (a)(3)(A).) E.F. was initially removed from the guardian on June 12, 2020, making January 2022, the date of the contested 18-month review hearing, the 19th month.

*The 18-Month Review Hearing*

At each review hearing, "there is a statutory presumption that the child will be returned to parental custody." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) A court, therefore, must return the child to parental custody at the 18-month review hearing unless it finds by a preponderance of the evidence that doing so would "create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a).)

If the juvenile court finds it would be detrimental to return the child, it must set a hearing under section 366.26 to select a permanent plan. (§ 366.22, subd. (a)(3).) Section 366.22, subdivision (b), however, allows the juvenile court, under circumstances not present here, to continue reunification services beyond 18 months. To qualify, the parent must be a resident of a court-ordered substance abuse treatment program; or recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security; or a minor or nonminor dependent at the time of the initial hearing. The court must also find the parent is making significant and consistent progress, there is a substantial probability the child will be returned to parental custody, and it is in the child's best interest to continue reunification efforts. Under those circumstances, the court may continue services up to 24 months from the date the child was initially removed from parental custody. (§ 366.22, subd. (b).)

Substantial probability of return presumes the parent falls within one of the exceptions listed in section 366.22, subdivision (b), identified above. In order to make the finding, the juvenile court must find the parent consistently and regularly contacted and visited the child, made significant and consistent progress in the prior 18 months in resolving the problems that led to the child's removal from the home, and demonstrated the capacity and ability both to complete the objectives of his or her substance abuse treatment plan or complete a treatment plan postdischarge from incarceration, institutionalization, or detention, or following deportation to his or her country of origin

9.

and his or her return to the United States and provide for the child's safety, protection, physical and emotional well-being and special needs. (§ 366.22, subd. (b)(1)–(3)(A).)

The juvenile court may also continue reunification services beyond the 18-month review hearing if it finds the parent was never provided reasonable reunification services. (*In re M.F.* (2019) 32 Cal.App.5th 1, 21.)

*Standard of Review*

On a challenge to the juvenile court's reasonable services finding, we view the evidence in a light most favorable to the respondent, indulging all legitimate and reasonable inferences to uphold the verdict. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) If substantial evidence supports the juvenile court's finding, we will not disturb it. (*Ibid*.) As father bears the burden of demonstrating error on appeal (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632), he must show that the juvenile court's finding he was provided reasonable reunification services is not supported by substantial evidence. We conclude he has failed to make such a showing.

*Substantial Evidence Supports the Juvenile Court's Finding Father Was Provided Reasonable Reunification Services*

Father contends the services provided by the agency were not reasonable because the agency did not facilitate drug testing or meaningful visitation. We disagree.

A key issue for father in reunifying with E.F. was to demonstrate that he could maintain a sober lifestyle. To that end, he was ordered to participate in drug testing and substance abuse treatment if he tested positive. By the 12-month review hearing, he had tested several times by urinalysis with negative results but had yet to submit a hair follicle for testing. The juvenile court was impressed with father's efforts and believed there was a substantial probability that E.F. would be placed in his custody with another period of reunification services. However, the court wanted father to submit to a hair follicle analysis and ordered him to complete one. Father did not make himself available for testing and, by the 18-month review hearing, he relapsed.

In assessing the reasonableness of reunification services, the juvenile court considers whether the agency maintained contact with the parent and assisted the parent in accessing services. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972–973.) However, the court also considers whether the parent maintained contact with the agency and was cooperative. Here, it appears the social worker attempted multiple times to reach father after the revised case plan was filed to review it with him but was unsuccessful until after he relapsed and was arrested. According to her report, he did not subsequently make himself available for testing. However, she does not explain what efforts she made to drug test him and that question was not asked of her at the hearing. At the same time, there is no information in the record as to what efforts father made to be tested after his relapse. He testified he did not have an assigned social worker for a period of time, which was not disputed. However, his attorney did not establish the relevant timeframe or that another social worker was not filling in at that time.

Reunification services will rarely be perfect. Accordingly, " '[t]he standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1159.) The juvenile court found father was provided reasonable reunification services based on the totality of the circumstances. We concur. While there may have been more the agency could have done to facilitate a hair follicle test for father, there is no reason to believe based on his lack of effort that he would have participated in the test. In addition, the purpose of the hair follicle test was to determine whether he was using drugs. His relapse and arrest answered that question.

As to visitation, father had access to E.F. by multiple means, including telephone and video, and could have visited her in person if he traveled to California. Father complains the visits did not have any "meaning" without explaining how they lacked meaning. According to the record, he took advantage of the telephone and video visitation. If there was anything lacking it was, in E.F.'s view, his availability.

We conclude substantial evidence supports the juvenile court's finding father was provided reasonable reunification services and find no error on this record.

## DISPOSITION

The petition for extraordinary writ is denied.  This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.